UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MICHELLE S.,<br>Plaintiff,<br>v.<br>COMMISSIONER OF SOCIAL SECURITY,<br>Defendant. | CASE NO. 3:26-cv-05224-GJL<br><br>SOCIAL SECURITY DISABILITY APPEAL ORDER |

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and Local Magistrate Judge Rule 13. *See also* Consent to Proceed Before a United States Magistrate Judge, Dkt. 3. This matter has been fully briefed. *See* Dkts. 19, 24, 25.

Having considered the Administrative Record (AR) and all memoranda, the Court concludes that the Administrative Law Judge (ALJ) did not err in concluding that Plaintiff was not disabled. Accordingly, this matter is **AFFIRMED**.

//

//

//

## I. PROCEDURAL HISTORY

On May 9, 2019, Plaintiff filed an application for Title II Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423(a). AR 172. Her claim was denied initially on July 11, 2019, and upon reconsideration on September 11, 2020. AR 172, 185. The matter came on for hearing before ALJ John Michaelsen on July 22, 2021, AR 127, who issued a decision concluding that Plaintiff was not disabled on August 12, 2021. AR 76–90. The Appeals Council denied Plaintiff's request for review on August 11, 2022, making ALJ Michaelsen's decision the Commissioner's final decision subject to judicial review. AR 1.

On September 28, 2022, Plaintiff filed a Complaint in the United States District Court for the Western District of Washington, AR 3378–80, and by Order entered March 16, 2023, United States Magistrate Judge Theresa L. Fricke, pursuant to a stipulation by the parties, reversed and remanded the matter. AR 3384–85, 3390–91. In turn, the Appeals Council remanded the matter on September 9, 2023. AR 3399.[1]

The matter came on for an additional hearing on June 12, 2024, AR 3304, and on October 16, 2024, ALJ Allen Erickson (the ALJ) issued another decision concluding that Plaintiff was not disabled. AR 2939–61. On March 5, 2026, Plaintiff filed another Complaint with this Court, seeking judicial review of the ALJ's decision. Dkt. 1. Defendant filed the sealed Administrative Record on May 7, 2026. Dkt. 6.

## II. BACKGROUND

Plaintiff was born on December 12, 1979, and was thirty-six years old on January 28, 2016, her alleged date of disability onset. AR 173. Plaintiff has at least a high school education.

---

[1] While Plaintiff's appeal was pending before the United States District Court for the Western District of Washington, Plaintiff filed a new application for DIB, alleging disability as of February 1, 2016. AR 3488. Upon remand, the Appeals Council instructed that Plaintiff's two claims be consolidated and that a new decision be issued on those consolidated claims. AR 3402.

AR 3574. According to the ALJ, Plaintiff suffers from the severe impairments of: rheumatoid arthritis and fibromyalgia. AR 2943. The ALJ, however, found that Plaintiff was not disabled because she had the Residual Functional Capacity (RFC) through her Date Last Insured (DLI) to:

> perform light work as defined in 20 CFR 404.1567(b), except occasional climbing of ladders, ropes, or scaffolds; occasional crawling; occasional exposure to vibration; occasional exposure to extreme cold temperatures; and frequent but not constant handling and fingering bilaterally.

AR 2947.

## III. DISCUSSION

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of benefits if the ALJ's findings are based upon legal error or are not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).

Plaintiff argues that the ALJ erred in evaluating: (1) her severe impairments at Step Two; (2) certain medical opinion evidence; and (3) her subjective symptom testimony. Dkt. 19 at 1.

### A. Step Two

First, Plaintiff argues that the "ALJ erred at Step Two by finding no severe mental impairment." Dkt. 19 at 4.

At Step Two of the Social Security evaluation process, an ALJ must determine "whether the claimant has a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment is not severe if it does not "significantly limit" one's ability to conduct "basic work activities." 20 C.F.R. §§ 404.1522(a), 416.922(a). Basic work activities are defined as the "abilities and aptitudes necessary to do most jobs." *Id.* §§ 404.1522(b), 416.922(b). "An

impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work.'" *Smolen*, 80 F.3d at 1290 (quoting *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (adopting Social Security Ruling (SSR) 85-28)).

"[T]he [S]tep-[T]wo inquiry is a de minimis screening device to dispose of groundless claims." *Id.* "If a claimant has submitted evidence of a severe impairment, we analyze an ALJ's [S]tep-[T]wo denial by asking whether the ALJ had substantial evidence to find that the medical evidence clearly establish [the claimant] did not have a medically severe impairment or combination of impairments." *Glanden v. Kijakazi*, 86 F.4th 838, 844 (9th Cir. 2023) (internal quotations marks and citation omitted).

In considering whether mental impairments are severe, the ALJ considers the claimant's functioning in four broad functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ then rates the degree of the claimant's limitation in these areas on a five-point scale, "[n]one, mild, moderate, marked, [or] extreme." *Id.* §§ 404.1520a(c)(4), 416.920a(c)(4). If the ALJ rates the degree of limitation as "none" or "mild" in all four areas, then the mental impairment is not "severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1).

Finally, "harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a). Generally, an error is harmless if it is not prejudicial to the claimant and is "inconsequential to the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*,

454 F.3d 1050, 1055 (9th Cir. 2006); *see also Molina*, 674 F.3d at 1115. "If an ALJ fails to find a severe impairment at Step Two but accounts for any limitations resulting from the alleged impairment in assessing RFC, the Step Two error is harmless." *Ronnie R.*, No. 2:23-CV-34-DWC, 2023 WL 5927146, at *4 (W.D. Wash. Sep. 12, 2023) (citing *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007)).

Here, at Step Two, the ALJ determined that Plaintiff's "medically determinable mental impairment of depressive disorder did not cause more than minimal limitation in [Plaintiff]'s ability to perform basic mental work activities and was therefore nonsevere." AR 2944. In considering the four areas of functioning, the ALJ concluded that Plaintiff had "no limitation" in all four areas. AR 2945.

Plaintiff argues that "[a]cceptable medical sources diagnosed the mental impairments [of major depressive disorder and bipolar II disorder] using acceptable diagnostic techniques[,]" and these "mental impairments also imposed significant functional deficits in basic work activities." Dkt. 19 at 4–5. Consequently, "with 2 acceptable medical sources, Plaintiff established severe mental impairments imposing moderate to severe limitations in basic work activities." *Id.* at 5.

Assuming *arguendo*, that the ALJ lacked "substantial evidence to find that the medical evidence clearly establish[ed] [Plaintiff] did not have a medically severe impairment or combination of impairments[,]" *Glanden*, 86 F.4th at 844 (9th Cir. 2023) (internal quotations marks and citation omitted)—in other words, that the ALJ erred in failing to find Plaintiff's mental impairments were "severe impairments" at Step Two, which the Court does not concede[2]— Plaintiff, nonetheless, does not argue that the ALJ committed harmful error in doing

---

[2] To the contrary, at her hearing in this matter, when asked whether she had "gotten psychiatric treatment at all[,]" Plaintiff responded, "[n]o[,]" AR 3320, and that the "[p]rimary issue [Plaintiff] had [wa]s a physical issue, primarily, yes." AR 3321.

so. *See* Dkt. 19 at 4–5. Moreover, despite her assertion that her mental impairments "imposed significant functional deficits in basic work activities" Plaintiff does not articulate *how* the ALJ failed to account for these limitations, nor does she identify any, in her words, "functional deficits in basic work activities" that the ALJ failed to incorporate into her RFC. *Id.*; *see also Hurn v. Saul*, 798 F. App'x 976, 978–79 (holding that "a reversible error occurs only when a severe impairment erroneously excluded at [S]tep [T]wo caused additional functional limitations not accounted for in the RFC assessment").

For these reasons, the Court concludes that any error in evaluating Plaintiff's mental impairments at Step Two was harmless.

**B. Medical Opinion Evidence**

Next, Plaintiff argues that the ALJ "did not provide legally sufficient reasons not to adopt Dr. Hulse's limitations" in Plaintiff's mental functioning. Dkt. 19 at 5. The Court does not agree.

For applications filed after March 27, 2017, in evaluating medical opinion evidence, ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a).[3] Rather, ALJs must consider every medical opinion or prior administrative medical finding in the record and evaluate the persuasiveness of each one using specific factors. *Id.* The critical factors in an ALJ's determination of persuasiveness are the "supportability" and "consistency" of each opinion. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).

"Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785,

---

[3] The regulations regarding the evaluation of medical opinion evidence have been amended for claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5867–68, 5878–79 (Jan. 18, 2017). Because Plaintiff's application was filed after that date, the new regulations apply. *See* 20 C.F.R. §§ 404.1520c, 416.920c.

791–92 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(c)(1)); *see also id.* at § 416.920c(c)(1). A medical opinion is more "supportable," and therefore more persuasive, when the sources provide ample relevant "objective medical evidence and supporting explanations" for their medical opinion. *Id.* "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods*, 32 F.4th at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)); *see also id.* at § 416.920c(c)(2).

Critically, an ALJ must articulate "how [they] considered the supportability and consistency factors for a medical source's medical opinions" when making their decision. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792.

Dr. Hulse submitted a "Mental Evaluation" on behalf of Plaintiff's disability claim on June 27, 2020. AR 857–64. In Dr. Hulse's opinion, *inter alia*, Plaintiff was "severely impaired" in her: concentration; ability to reason abstractly; and judgment. AR 861–62. Dr. Hulse diagnosed Plaintiff with Major Depressive Disorder, Recurrent, Moderate, and noted that "[t]he prognosis for [Plaintiff] is poor[,] [v]egetative depression is taking its toll on [Plaintiff] in the areas of self-esteem, motivation, and self[-]care." AR 863.[4]

The ALJ found Dr. Hulse's opinion was "not persuasive." AR 2957. As for supportability, the ALJ found the opinion to be "internally inconsistent" in that it "stated that

[4] To the contrary, Dr. Hulse also noted that Plaintiff "stated that [she was] happy, glad[,] and impatient and that [Plaintiff] appeared both happy and glad." AR 860. Plaintiff also "denied any paranoid delusions, grandiose delusions, suicidal ideation, homicidal ideations, auditory hallucinations, visual hallucinations, obsessive thoughts or behaviors or any ideas of reference." AR 861. Plaintiff "endorsed mood swings, but blamed it on 'early menopause.'" *Id.* Plaintiff reported insomnia but had not experienced symptoms "[i]n a couple of years thanks to [medication]" and her "energy level was high." AR 861. In turn, despite the existence of some "severe" limitations, Dr. Hulse, nonetheless, opined that Plaintiff "could probably complete a normal work day or a work week without interruptions from psychologically based symptoms." AR 863.

[Plaintiff]'s ability to sustain concentration within the context of uncomplicated mental operations to be severely impaired, but Dr. Hulse also mentioned that [Plaintiff]'s concentration, [and] ability to sustain herself in activities, appears to be in the average range of functioning; she can ask simple questions; and she can learn new tasks and make simple, [routine] work-related decisions." *Id.* The Court agrees that Dr. Hulse's findings of "average" concentration,[5] ability to sustain in activities, ask simple questions, learn new tasks, and make work-related decisions do not support Dr. Hulse's opinion of "severe" functional limitations in Plaintiff's "concentration, ability to reason abstractly, and judgment." *See* AR 861–62.

As for consistency, the ALJ found the opinion "not consistent with the current record as a whole, as it pertains to the period at issue; [Plaintiff] has received minimal mental health treatment at best[,]" and "Plaintiff "did not have any pattern of significantly escalated mental health care at all."[6] AR 2957. Indeed, the record is devoid of treatment notes from mental health appointments at any point in the relevant period, *see* AR 1–4535, and as discussed at Step Two, *supra*, Plaintiff, *herself*, testified that she had received no psychiatric treatment *at all*, and that her primary functional issues were physical, not mental. AR 3320–21.

For this reason, the Court concludes that the ALJ's consistency, like the ALJ's supportability findings as to Dr. Hulse's opinion, are supported by substantial evidence, and the ALJ did not err in evaluating Dr. Hulse's medical opinion evidence.

//

---

[5] Dr. Hulse's report also notes, however, that Plaintiff "reported that she can read for 'hours[,]'" despite "severe" impairments in concentration opined elsewhere in the report. AR 861–62.

[6] The ALJ also noted that Plaintiff "was not psychiatrically hospitalized during the period at issue." AR 2957. The Court declines to more fully address the admission/hospitalization standard curiously imposed by the Administrative Law Judge in the body of this Order. The Court cannot discern precisely how hospitalization or "admission" is a prerequisite for disabling mental illness either practically or under the regulations *See* 20 C.F.R. §§ 404.1520a, 416.920a (setting forth no such requirement).

**C. Subjective Symptom Testimony**

Finally, Plaintiff argues that the ALJ erred in evaluating her subjective symptom testimony. Dkt. 19 at 13–15. Once again, the Court does not agree.

"An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible." *Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021) (citation omitted). The first step requires an ALJ to determine "whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (citation omitted). This objective medical evidence does not have to corroborate the severity of the alleged symptoms, rather, "the medical evidence need only establish that the impairment could reasonably be expected to cause some degree of the alleged symptoms." *Id.*

If a claimant has satisfied the first step, and there is no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [their] symptoms only by offering specific, clear, and convincing reasons for doing so." *Id.* at 1112 (citation omitted). The specific, clear, and convincing standard, however, is "the most demanding [standard] required in Social Security cases." *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002). "The standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). As with all findings by the ALJ, however, the specific, clear, and convincing reasons for rejecting the claimant's testimony about the severity of their symptoms must also be supported by substantial evidence in the record. 42 U.S.C. § 405(g); *see also Bayliss*, 427 F.3d at 1214 n.1.

In her 2019 Function Report, Plaintiff reported, *inter alia*, that her "illnesses and conditions limit the amount of time that [Plaintiff] can sit upright and stand for any period of time without incurring pain and swelling." AR 330. She reported that "[b]esides going to appointments for medical reasons, *I can only tolerate laying in bed most of the day*." AR 331 (emphasis added). Similarly, at her hearing in 2021, AR 127, Plaintiff testified she had "a lot of problems sitting up for very long or standing for very long. I have problems with the use of my hands and spasms." AR 135. Her rheumatoid arthritis now caused "stiffness and the restricted usage lasts all day as opposed to just some of the day or just in the morning." AR 136.

Plaintiff also stated that her average pain level "[b]efore I take my medicine it's probably about an eight or a nine, and then on a steady level about a six." AR 145. She testified that she was about to sit for "[a]bout 30 minutes" before needing to stand up, and she could stand for "about 30 to 40 minutes . . . as long as I'm not walking. If I'm standing, holding on to something, I can stand a little longer." AR 146.

At her second hearing in 2024, AR 3304, Plaintiff reiterated that she had "a very hard time sitting upright, and [her] neck and [her] back can't handle it, and [her] hips hurt quite badly, but the neck is the worst with sitting up." AR 3315. Plaintiff testified "I spend most - -I spend most of my time in bed and - - and - - and that's because I - - I just - - I can't be sitting upright." AR 3321. She testified that she is bedridden "[m]ost of the time" spending "holidays and birthdays and things like that, the kids usually just come in my room and lay in bed with me, and we do gifts and stuff, and then - - because they don't want to exclude me." AR 3333.

The ALJ found that Plaintiff's severe impairments could reasonably be expected to cause the alleged symptoms and did not make an affirmative malingering finding. AR 2948. The ALJ,

therefore, was required to offer specific, clear, and convincing reasons for discounting Plaintiff's testimony. *See Smith*, 14 F.4th at 1112.

Here, the ALJ sought to do so based upon inconsistencies with the record, Plaintiff's activities of daily living, and improvement with medication. AR 2950. These are proper bases for an ALJ to discount a claimant's subjective symptom testimony. *See Carmickle v. Comm'r. Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse" subjective symptom determination); *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) (citation omitted) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability.").

1. <u>Inconsistencies with the Record</u>

In discounting Plaintiff's testimony based upon inconsistencies with the medical record, the ALJ found a provider's note from February 2018 "wholly inconsistent with [Plaintiff]'s allegation[s] of disability[,]" in that Plaintiff reported that she was "able to do everything she wishe[d] to do[,]" including "some exercise[,]" "keep[ing] her home," and "car[ing] for multiple pets[.]" AR 415, 2950. Another provider, Dr. Taylor, noted that Plaintiff "had not exhibited any evidence of inflammatory symptoms since he began treating [Plaintiff]" and saw "no rheumatological disabling diagnosis at this time." AR 679, 2951. A third doctor noted that Plaintiff presented with an "extensive" list of subjective complaints, but nonetheless, exhibited "very little objective abnormality." AR 1402, 2951.

Indeed, medical records from 2018 note that Plaintiff "is doing quite well[,] [certain medication] has worked wonderfully. She is able to do everything she wishes to do. She is able

to teach. *She does some exercise*. She is able to keep her home. She is able to care for multiple pets." AR 415 (emphasis added). Medical records from 2017 note that Dr. Taylor "see[s] no rheumatological disabling diagnosis at this time" because there were "no demonstrable inflammatory symptoms while [Dr. Taylor] ha[s] been monitoring her[,]" AR 1567, and Dr. Taylor considered Plaintiff's rheumatoid arthritis to be "[i]nactive." AR 1569.

At bottom, these findings by the ALJ provide substantial evidence of inconsistencies with the record, and because the ALJ offered a specific, clear, and convincing reason, supported by substantial evidence for discounting Plaintiff's testimony, the Court concludes that the ALJ did not err in rejecting Plaintiff's subjective symptom testimony.

2. <u>Remaining Grounds</u>

Because the ALJ offered a specific, clear, and convincing reason, supported by substantial evidence, for rejecting Plaintiff' testimony, the Court need not address the ALJ's additional grounds for rejecting Plaintiff's testimony because any error with respect to those reasons would be harmless. *See Molina*, 674 F.3d at 1115 (9th Cir. 2012) (error harmless if "there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion").[7]

//

[7] The Court, nonetheless, notes that the ALJ improperly relied upon findings throughout the decision referencing Plaintiff's purported volunteer activities, and the ALJ did err by using those activities to discount Plaintiff's subjective symptom testimony. Plaintiff testified about her volunteer activities, that "2005 was the last time. But then, during Hurricane Harvey, which I keep forgetting what year it was, but I think it was 2017, we were living in Texas. And there was a lot of people who post[ed] on social media and stuff about needing help. And because I still know people who were down there, with like the Cajun Navy, I was able to take their information off of Facebook and send it to the people that I knew and be able to help them that way. Unfortunately, that's the limit of what I was able to help people with. *I wasn't able to go or help the way I used to*, but I could send the information that I saw on Facebook to somebody that I knew. And so, I did that a couple of times." AR 149 (emphasis added). The Court notes that the ALJ's "paraphrasing of [this] record material is not entirely accurate regarding the content or tone of the record." *Reddick v. Chater*, 157 F.3d 715, 722–23 (9th Cir. 1998).

## IV. CONCLUSION

Based on these reasons and the relevant record, the Court **ORDERS** that this matter be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

Dated this 2nd day of November, 2026.

Grady J. Leupold
United States Magistrate Judge